UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAVION G. DAVIS,

        Petitioner,

v.                                                   Case No. 13-cv-1220-bhl

DAN CROMWELL[1],

        Respondent.

---

### ORDER DENYING AMENDED PETITION FOR WRIT OF *HABEAS CORPUS*

---

        Davion G. Davis seeks a writ of *habeas corpus*. On January 10, 2008, Davis was convicted in Racine County Circuit Court on one count of first-degree intentional homicide and one count of possession of a firearm by a convicted felon. (ECF No. 11.) He was sentenced to life in prison plus five years. (*Id.*) The Racine County Circuit Court denied Davis' post-conviction motion for a new trial and, on appeal, the Wisconsin Court of Appeals affirmed. (*Id.*); *State v. Davis*, 808 N.W.2d 741 (Wis. Ct. App. 2011) (per curiam). After the Wisconsin Supreme Court denied his petition for review, 820 N.W.2d 430 (Wis. 2012), Davis filed a petition for writ of *habeas corpus* in this Court. (ECF No. 1.) He amended his petition on March 4, 2014, and it is his amended petition that is now before the Court. (ECF No. 11.)

        Davis initially raised four grounds for relief in his amended petition. (ECF No. 11.) But he then abandoned one of the grounds by failing to address the issue in his briefs. *See Duncan v. Wisconsin Dept. of Health and Family Servs.*, 166 F.3d 930, 934 (7th Cir. 1999) (holding "that a party must develop any arguments it wishes this court to consider in its … brief, or they will be deemed waived or abandoned.") Accordingly, the Court will address only the three grounds

---

[1] Since filing his petition, Davis has been moved from the Green Bay Correctional Institution to the Redgranie Correctional Institution. Under Rule 2 of the Rules Governing Section 2254, Davis must name the state officer who has custody of him as respondent. Accordingly, the Court has substituted Dan Cromwell, the Redgranite Warden, as respondent. The Clerk is directed to update the case caption accordingly.

1

Davis has pursued in his briefs. First, he argues that his Sixth and Fourteenth Amendment rights were violated because of the way in which the *venire* for his jury was called and seated during the jury selection process. (ECF No. 11.) Second, Davis contends that the trial judge engaged in impermissible fact-finding in violation of Davis' Sixth Amendment rights when setting Davis' eligibility date for extended supervision. (*Id.*) Third, he asserts that his trial attorney provided ineffective assistance of counsel. (*Id.*)

## LEGAL STANDARD

A federal *habeas* court reviews the "decision of the last state court to rule on the merits of the petitioner's claim." *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant *habeas* relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller v. Smith*, 765 F.3d 754, 760 (7th Cir. 2014) (quoting 28 U.S.C. §2254(d)(1), (2)).

"The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

2

## ANALYSIS

I.   **The Wisconsin Court of Appeals Did Not Engage in an Unreasonable Application of The Law When It Rejected Davis' Fair Jury Selection Claim.**

Davis contends his Sixth and Fourteenth Amendment rights were violated during jury selection for his state court trial. (ECF No. 11.) He complains that when members of the pool were called and seated for questing during jury selection, none of the first thirty-eight were Black. (*Id.*) He acknowledges that the pool itself was racially diverse, with Black potential jurors comprising thirteen of the sixty-four pool members, but argues the trial court improperly rejected his counsel's request that the court "Re-shake" or reorder those jurors initially called for questioning. (*Id.*) He also complains about the court's refusal to investigate how a random drawing of jurors could have resulted in this order and its comment that the clerk in charge of selecting pool members for seating was herself Black. (*Id.*) Davis also contends that Black people have been underrepresented on Racine County juries for "[a]pproximately 15-Years." (*Id.*)

Citing *Duren v. Missouri*, 439 U.S. 357 (1979) and *Lockhart v. McCree*, 476 U.S. 162 (1986), the Wisconsin Court of Appeals rejected Davis' jury pool complaint. *State v. Davis*, 808 N.W.2d 741, ¶ 3 (Wis. Ct. App. 2011) (per curiam). The court of appeals explained that a defendant is entitled to a jury pool that represents a fair cross-section of the community, but that the Supreme Court has held that this right applies at the point when names are entered into the computer system that selects the panel and not to the final jury venire. *Id.* (quoting *Lockhart*, 476 U.S. at 174.) The court further noted that the record showed that over twenty percent of potential jurors in Davis' jury pool were African American, and Davis' own exhibit shows that the minority population in Racine County was only sixteen percent at the time. *Id.* (citing *Duren*, 439 U.S. at 364.)

Davis' *habeas* challenge fails because the Wisconsin Court of Appeals correctly applied the law. Under established Supreme Court precedent, Davis' Sixth and Fourteenth Amendment rights to a racially diverse and representative jury apply to the jury pool or *venire* itself, not to those jurors ultimately empaneled. *See Lockhart*, 476 U.S. at 174 (holding that "an extension of the fair-cross-section requirement to petit juries would be unworkable and unsound"). Davis' petition admits that his jury pool included thirteen Black potential jurors, 20.3% of the *venire*, and he acknowledged in his brief to the court of appeals that the African American population of

Racine County was, at the time, only 10.7%. (ECF No. 11, 16-2.) Racine County's method of selecting the jury pool thus resulted in a diverse group more than sufficient to satisfy the applicable Constitutional requirements, as the state courts correctly concluded. *See Davis*, 808 N.W.2d 741, ¶ 3. While the Fourteenth Amendment precludes purposeful discrimination in the selection of the petit jury, *see Batson v. Kentucky*, 476 U.S. 79, 84-85 (1986), there is no evidence of any intentional discrimination in the selection of the jury that convicted Davis and the state court's rejection of this argument cannot be considered objectively unreasonable.

Likewise, Davis' complaints about the trial court's handling of his counsel's objection also fail to warrant *habeas* relief. There is no clearly established Constitutional right to a "reshuffling" of jurors. And as the trial court explained, Davis' panel was randomly selected from a racially diverse pool, satisfying the applicable Constitutional requirements. *See Davis*, 808 N.W.2d 741, ¶ 3. While the trial court's comment that the jury pool clerk was herself African American was odd and not relevant to the Constitutional issue, this awkward attempt to reassure Davis of the random selection of jurors did not violate any clearly established Supreme Court precedent. Davis' assertion that Racine County juries have lacked adequate racial representation is unsupported and belied by the statistics of his own jury pool. Davis' complaints about jury selection do not warrant *habeas* relief.

## II. The Wisconsin Court of Appeals' Rejection of Davis' *Apprendi/Cunningham* Claim Was Not Objectively Unreasonable.

Davis' second ground for *habeas* relief is premised on the alleged denial of his Sixth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Cunningham v. California*, 549 U.S. 270 (2007). Davis argues that the sentencing judge engaged in improper judicial factfinding by characterizing Davis' conduct as "cold-blooded [and] deliberate" before setting Davis' extended supervision release eligibility date. (ECF No. 11, 23.) Davis contends that this description of his conduct constituted new fact finding that impermissibly enhanced his sentence. (*Id.*)

The Wisconsin Court of Appeals rejected Davis' *Apprendi/Cunningham* claim, concluding that the sentencing judge's description of Davis' conduct in committing the murder was not "fact-finding" but rather reflected the court's necessary and discretionary consideration of sentencing factors in establishing the date Davis would be eligible for release for extended supervision. *Davis*, 808 N.W.2d 741, ¶ 5. The court of appeals further explained that Davis'

sentence, including the date the court set for his eligibility for extended supervision, was within the statutory range for a person convicted of first-degree intentional homicide and sentenced to life imprisonment. *Id.*, ¶¶ 6-8. The sentencing court set Davis' eligibility date at January 1, 2063 but had the discretion to find him ineligible for release on extended supervision altogether. *Id.* Thus, the court of appeals explained, neither *Apprendi* nor *Cunningham* were implicated. *Id.*

The Wisconsin Court of Appeals correctly applied *Apprendi/Cunningham*, and its rejection of Davis' claim is not contrary to established federal law. Davis' sentence fell within the statutory range and the Supreme Court has never limited the authority of a judge to exercise broad discretion when imposing a sentence that falls within the given statutory range. *United States v. Booker*, 543 U.S. 220, 233 (2005) ("We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."). Nothing in state or federal law required the sentencing judge to make specific determinations of aggravating factors in order to impose a particular date for a defendant's eligibility for supervised relief. *See* Wis. Stat. §973.014(1g). The Wisconsin Court of Appeals did not err in its application of the law in rejecting Davis' *Appendi/Cunningham* claim.

### III. The Wisconsin Court of Appeals' Rejection of Davis' Ineffective Assistance of Counsel Claim Was Not Objectively Unreasonable.

Davis' third ground for *habeas* relief is based on the alleged ineffective performance of his trial counsel. (ECF No. 11.) He claims his counsel's performance was deficient in four ways, based on counsel's allegedly improper failure to: (1) object to the state's impeachment of a key witness; (2) inform the jury that two state witnesses had been granted immunity; (3) inform Davis of his Wisconsin statutory right to judicial substitution; and (4) contact exculpatory witnesses and otherwise fully investigate Davis' case. (*Id.*)

Davis first presented his ineffective assistance claims in a post-conviction proceeding in the trial court, which afforded him an evidentiary hearing (called a *Machner* hearing under Wisconsin procedure). (ECF No. 19-1.) Davis' trial counsel testified at the hearing, after which the trial court rejected Davis' ineffective assistance claims. (ECF No. 19-1, 19-2, 19-4.) He then presented the ineffective assistance claims on appeal and the Wisconsin Court of Appeals, applying *Strickland v. Washington*, 466 U.S. 668 (1984), concluded that the trial court had properly determined that Davis' counsel had not been deficient and that Davis had also failed to

5

show prejudice from the alleged deficiencies. *State v. Davis*, 808 N.W.2d 741, ¶¶ 9-20 (Wis. Ct. App. 2011) (per curiam).

In his *habeas* petition, Davis repeats the claims that he presented to the Wisconsin Court of Appeals without explaining how the state appellate court's ruling is objectively unreasonable. (ECF No. 11.) And in his supporting brief, Davis requests this Court to consider the allegedly prejudicial results of his counsel's failures in the aggregate. (ECF No. 23.) This approach misunderstands the limited review available to him under 28 U.S.C §2254. Under the federal *habeas* statute, a state court decision is an "unreasonable application of . . . clearly established Federal law" when the court applied Supreme Court precedent in "an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citations omitted). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Each of Davis' ineffective assistance grounds and the state courts' analysis of them is discussed briefly, but separately, below.

### A. Davis' Counsel Was Not Constitutionally Ineffective in His Handling of the State's Impeachment of Davis' Cousin.

Davis contends his counsel was ineffective in his handling of a witness, Davis' cousin, Melvin Davis, who had given the police an affidavit swearing that Davis had admitted to the underlying killing. (ECF No. 11.) At trial, Melvin Davis tried to disavow the statements in his affidavit, at which point the prosecutor used the affidavit to impeach him. (ECF No. 16-12.) The state also introduced testimony from a detective who explained the context in which the affidavit had been prepared and signed. (*Id.*) Although it is not a basis to claim ineffective assistance, Davis complains that the trial court admitted the affidavit for impeachment purposes over Davis' counsel's objections. (ECF No. 11.) Davis then further complains that his counsel failed to raise "the appropriate objection of Federal Constitutional concern," and that the prosecutor went over the affidavit "line by line, paragraph by paragraph" and called the detective to testify about its creation. (*Id.*)

The Wisconsin Court of Appeals dismissed this challenge for multiple reasons. First, it concluded that Davis' trial counsel had not been ineffective for failing to object to the detective's testimony because there was no basis for an objection and counsel could not be ineffective "for

6

Case 2:13-cv-01220-BHL   Filed 11/12/20   Page 6 of 10   Document 35

failing to pursue a meritless objection." *Davis*, 808 N.W.2d 741, ¶ 13. The court also noted that defense counsel had repeatedly and strenuously objected to the introduction of the affidavit, which resulted in the trial court instructing the jury that "the sole purpose of the affidavit was to aid their assessment of [the witness's] credibility." *Id.*, ¶ 14. The court of appeals concluded that there was "no deficient performance by counsel, and any potential prejudice was presumptively erased by the proper admonitory instructions." *Id.*

Davis has made no showing that the Wisconsin Court of Appeals' analysis was incorrect, let alone contrary to established federal law or based on an unreasonable determination of the facts in light of the state court evidence. It is not ineffective assistance for counsel not to make a meritless objection. *Carter v. Douma*, 796 F.3d 726, 735 (7th Cir. 2015) (citing *United States v. Neeley*, 189 F.3d 670, 684 (7th Cir. 1999) ("Obviously, counsel can not be considered ineffective for failing to make an objection to the introduction of evidence that was properly admitted.")). And, as the court of appeals noted, the trial court twice instructed the jurors that they could consider the affidavit solely for impeachment. *Davis*, 808 N.W.2d 741, ¶ 14. The court of appeals' conclusion that counsel did all that he could do and avoided doing more for strategic reasons – to avoid focusing the jurors' attention on the affidavit – is sensible and not subject to reversal on *habeas* grounds.

### B. Davis' Counsel Was Not Ineffective in Handling the Immunity Granted to the State's Witnesses.

Davis' second ineffective assistance argument challenges his counsel's failure to inform the jury that two of the state's witnesses had been granted immunity, and for failing to ask for a jury instruction on this point. (ECF No. 11.) Apparently, both his cousin, Melvin Davis, and another witness, Jason Jones, testified only after being offered some form of consideration for helping the prosecution. (*Id.*) Davis' trial counsel testified at the post-conviction hearing that he didn't request the jury instruction because he hadn't wanted to risk lending either witness's testimony any credibility. (ECF No. 19-1.) After the hearing, the court concluded that counsel should have requested a jury instruction on this issue, but that it was not prejudicial because both witnesses impeached themselves by presenting grossly inconsistent testimony at trial. *Davis*, 808 N.W.2d 741, ¶ 15. The Wisconsin Court of Appeals accepted the trial court's findings and reasoning, concluding they were not clearly erroneous and because Davis had not shown that any action by his counsel "led to an unreliable result." *Id.*

7

Like the Wisconsin Court of Appeals, this Court can find no error in the rejection of Davis' second ineffective assistance argument and certainly no error sufficient to warrant *habeas* relief. While Davis argues there is a "professional norm" to inform the jury of a grant of immunity and to request a jury instruction, he has not shown that the Wisconsin Court of Appeals inadequately applied federal law, as he must, to warrant relief from this federal court. (ECF No. 23.) Davis' arguments implicate matters of legal strategy and the Wisconsin Court of Appeals did not engage in an unreasonable application of federal law when it concluded that counsel made decisions for strategic purposes. *See United States v. Lindsay*, 157 F.3d 532, 536 (7th Cir. 1998) (noting the "strong *Strickland* presumption that trial counsel had good reasons for strategic decisions").

### C. Davis' Ineffective Assistance Argument Based on Wisconsin's Judicial Substitution Statute Fails to Provide a Basis for *Habeas* Relief.

Davis' next ineffective assistance argument relates to his counsel's alleged failure to advise him of Wisconsin's judicial substitution statute, Wis. Stat. § 971.20. (ECF No. 11.) During his appeal to state court, Davis asserted that his trial counsel had a "personal friendship" with the judge that should have been disclosed to Davis. *Davis*, 808 N.W.2d 741, ¶ 16. He then complained illogically that his counsel's friendship with the trial judge led the court to issue "pro-prosecution rulings by rote." *Id*.; (ECF No. 16-2.) In this federal *habeas* case, Davis argues that his counsel's failure to advise him of his right to judicial substitution directly resulted in Davis going to trial in front of a "Racist" "Judge, with a history of Bias [sic] Treatment of Black Defendant(s)," and that the breach of duty prejudiced him. (ECF No. 11, 23.) In the end, Davis insists he should have been informed of his right to substitute the trial judge and counsel's alleged failure to inform him warrants *habeas* relief.

The Wisconsin Court of Appeals rejected Davis' argument as "baseless." *Davis*, 808 N.W.2d 741, ¶ 17. Trial counsel testified at the post-conviction hearing that he had been to the judge's residence one time for a holiday gathering along with other members of the legal community. *Id.*; (ECF No. 19-1.) The court of appeals noted the lack of logic in Davis' assertion that a friendship between defense counsel and the trial judge would result in rulings *favoring the state*. *Davis*, 808 N.W.2d 741, ¶ 17. Counsel testified that he did not recall having a conversation on substitution with the defendant, but that it is his typical practice to do so and that he would have advised against substitution anyway. *Id.*, ¶ 18; (ECF No. 19-4.). The court

8

of appeals concluded that Davis did not demonstrate deficient performance, nor did he provide any reason to believe that a different judge would have ruled differently. *Davis*, 808 N.W.2d 741, ¶ 18.

Even if this Court also considers the new supporting allegations mentioned by Davis only in his federal petition, his claim remains the same: that Davis' trial counsel should have informed him of his right of judicial substitution and that Davis was prejudiced by counsel's failure. Davis offers nothing to overcome the presumption of correctness of his counsel's actions or prove deficient performance, and thus failed to meet his burden. He makes no assertion that any other rulings or findings would have occurred had there been a judge substitution. The Wisconsin Court of Appeals was not objectively unreasonable and did not misapply clearly established federal law in finding a lack of prejudice. Davis has failed to show that he suffered prejudice sufficient to satisfy an ineffective assistance of counsel claim.

### D. The Record Does Not Support Granting *Habeas* Relief Based on Davis' Claim that His Counsel Failed to Investigate the Case.

Davis' final ineffective assistance argument is based on Davis' complaint that his counsel failed to conduct a "sustained investigation" into the case, including the failure to contact or interview several key witnesses. (ECF No. 11.) Trial counsel testified to his investigatory efforts during Davis' post-conviction evidentiary hearing after which the trial court determined counsel had not acted inappropriately. (ECF No. 19-1, 19-4.) The Wisconsin Court of Appeals affirmed on appeal, noting that Davis' claims failed because trial counsel had, for example, attempted to subpoena one of the witnesses thirteen times. *Davis*, 808 N.W.2d 741, ¶ 20. The court of appeals further concluded that Davis' claims failed because he had not shown with any specificity how the trial outcome would have been different had his counsel acted as Davis insists he should have. *Id.*

The Wisconsin Court of Appeals did not render an objectively unreasonable application of federal law when denying Davis' claim. The record supports the trial court's post-conviction findings, and the Wisconsin Court of Appeals' affirmance, that Davis' counsel acted properly and that Davis had not proved prejudice. Davis failed to show prejudice at the appellate level and has again failed to do so in his petition for *habeas corpus*. Because the Wisconsin Court of Appeals properly applied federal law, including *Strickland*, to Davis' claims and the application was not objectively unreasonable, he is not entitled to habeas relief.

9

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2254 Cases, this Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted). Because no reasonable jurists could debate that the petition should have been resolved differently, the Court will not issue a certificate of appealability.

## CONCLUSION

The Court **DENIES** Davis' amended petition for writ of *habeas corpus*, ECF No. 11. The Court **DENIES** a certificate of appealability. The Court **DISMISSES** the case.

Dated at Milwaukee, Wisconsin on November 12, 2020.

s/ Brett H. Ludwig
BRETT H. LUDWIG
United States District Judge